IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J.P., a minor who sues by and through his father and next friend, CHRIS PRICE,<br><br>    Plaintiff,<br><br>v.<br><br>D.A. CREWS,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACT. NO.  2:12cv46-CSC<br>)                        (WO)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion to dismiss (Doc. 6) filed by Defendant D.A. Crews. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Having considered the motion and the submissions of the parties, the court finds that the motion to dismiss (Doc. 18) is due to be granted in part and denied in part.

**Standard of Review**

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to

draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, the Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**Facts[1] and Procedural History**

The relevant factual allegations of the amended complaint are as follows:

In October 2011, J.P., who is a minor, was incarcerated at the Alabama Department of Youth Services ("DYS") Mount Meigs Campus. (Doc. 1 ¶8). On October 25, 2011, J.P. and two other juvenile detainees engaged in destructive behavior by throwing chairs and stomping on a bookshelf. (Doc. 1 ¶9). D.A. Crews, a DYS officer, entered the room to stop the juveniles' destructive behavior. (Doc. 1 ¶¶4, 11). All three juvenile detainees stopped what they were doing before Crews said or did anything further. (Doc. 1 ¶¶ 11-12). J.P. threw his hands in the air as a sign of surrender and said, "I'm done." (Doc. 1 ¶12). The other two juvenile detainees also surrendered and walked to a door to be let out of the room. (Doc. 1 ¶13). Crews then lifted J.P. by the throat so that his toes barely touched the ground and slammed his head against a wall. (Doc. 1 ¶14). J.P. said, "Bro, chill out." *Id.* Crews's hold on J.P.'s throat was tight enough to leave fingerprint bruises on J.P.'s neck. *Id.* J.P. later developed a knot on the back of his head from being slammed against the wall.

After lifting J.P. by the throat and slamming him against the wall, Crews turned him

---

[1] At this stage of the proceedings, for purposes of ruling on the motion to dismiss, the facts alleged in the complaint and reasonable inferences to be drawn therefrom are set forth in the light most favorable to the plaintiff. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

around, pressed his weight against him, and slammed his face into a nearby table several times, breaking one of J.P.'s teeth. (Doc. 1 ¶16). The second time Crews slammed J.P.'s head into the table, blood began to flow from J.P.'s nose and mouth. (Doc. 1 ¶18). The inside of J.P.'s mouth and lips were cut and his lips remained swollen for about two weeks afterward. *Id.*

After slamming J.P.'s head into the table, Crews removed J.P. from the room. (Doc. 1 ¶21). J.P. was taken to a truck and thrown on the truck face first. (Doc. 1 ¶22). J.P. was yelling at Crews, "You just broke my tooth out." *Id.* Several security staff then held J.P. while another security guard began hitting him with a baton on the leg. *Id.* The baton left a deep, six-inch-wide bruise. *Id.*

J.P. was taken to a nurse's station after the incident where his injuries were cleaned and photographed. (Doc. 1 ¶ 24). His broken tooth was temporarily repaired several days later, and was permanently repaired two or three weeks after the incident. (Doc. 1 ¶ 24, 26).

On January 17, 2012, J.P., by and through his father, Chris Price, filed a complaint against Crews in his official and individual capacities. (Doc. 1 ). J.P. asserted claims under 42 U.S.C. § 1983 alleging that Crews violated his rights pursuant to the United States Constitution, and J.P. also asserted tort claims under Alabama law. *Id.* On February 16, 2012, Crews filed the instant motion to dismiss.

**Discussion**

**I. Immunity - Sovereign Immunity and the Eleventh Amendment**

Crews argues that, in his official capacity, he is immune from suit from J.P.'s constitutional claims under 42 U.S.C. § 1983 and from J.P.'s state law claims. (Doc. 6-1 p. 7). *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials are immune from suit under § 1983 when sued for monetary relief in their official capacities); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. . . . [T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction.").

In response, J.P. acknowledges that he cannot seek compensatory and punitive damages from Crews in his official capacity. (Doc. 12-1 pp. 13-14). J.P. states that he seeks only a declaratory judgment against Crews in his official capacity, not monetary relief. *Id*. Although the Eleventh Amendment "bars suits seeking retrospective relief such as restitution or damages," it "does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief." *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dept. of Health and Rehab. Servs.*, 225 F.3d 1208, 1220 (Eleventh Cir. 2000). Accordingly, J.P.'s claim for declaratory relief against Crews in his official capacity is not due to be dismissed. Since J.P. has no other claims against Crews in his official capacity, the motion to dismiss is due to be denied with respect to Crews's assertion that,

under the Eleventh Amendment, he is immune from suit in his official capacity.

### III.   Count I: Fourth Amendment

Crews seeks dismissal of Count I of the complaint, in which J.P. alleges that Crews used excessive force in violation of the Fourth Amendment to the United States Constitution. (Doc. 1 ¶¶ 38-45).  J.P. concedes that Count I is due to be dismissed.  (Doc. 12 p. 8). Accordingly, Count I will be dissmissed.

### IV.   Count III:[2] Fourteenth Amendment

In Count III of the complaint, J.P. brings a claim pursuant to 42 U.S.C. § 1983 alleging that Crews violated his substantive due process rights under the Fourteenth Amendment.  (Doc. 1 ¶¶ 54-60).  Crews argues that the application of force was necessary to stop J.P. and the two other students from "continuing their destructive behavior."  (Doc. 6-1 pp. 5-6). *Cf. Cockrell*, 510 F.3d at 1311 ("Prison guards may use force when necessary to restore order." (emphasis added)).  However, as Crews acknowledges, the complaint alleges that J.P. and the other minors "voluntarily stopped" their behavior *before* Crews proceeded to apply force.  (Doc. 6-1 p. 2).  Thus, under the factual scenario outlined in the complaint, no physical force was needed to stop J.P. and the other minors from throwing chairs and stomping on the bookshelf.

Crews also argues, without supporting legal authority, that J.P.'s alleged injuries were

---

[2] In Count II of the complaint, J.P. alleges that Crews inflicted cruel and unusual punishment in violation of the Eighth Amendment.  (Doc. 1 ¶¶ 46-53).  Crews has not moved to dismiss Count II.  (Doc. 6).

too "minimal" to give rise to a Fourteenth Amendment claim. (Doc. 6 pp. 5-6). However, in *Hudson v. McMillan*, 503 U.S.1 (1992),[3] the Supreme Court held that, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." 503 U.S. at 9.  The Supreme Court further held that "blows . . . which caused bruises, swelling, loosened teeth, and a cracked dental plate" – injuries substantially similar to those alleged by J.P. in this case – were not *de minimus* for the purpose of considering the plaintiff's excessive force claim. *Id*. at 10.

In *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), the Supreme Court held that the extent of an injury can provide "some indication of the amount of force applied" and whether that amount of force "could plausibly have been thought necessary in a particular situation." 130 S. Ct. at 1178.  However, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178-79.  There is no "arbitrary quantity of injury" that requires the automatic dismissal of an excessive force claim. *Id*.  Instead, as the Supreme Court reiterated in *Wilkins*, "the core judicial inquiry" is not the extent of the injury, but "the nature of the force—specifically, whether it was nontrivial and 'was applied ... maliciously

---

[3]The court notes that, while *Hudson* was an Eighth Amendment excessive force case, "both Fourteenth and Eighth Amendment excessive force claims" are evaluated under the same legal standard. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)

and sadistically to cause harm.'" *Id*. at 1179; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (holding that the validity of an excessive force claim "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."(citations and internal quotation marks omitted)).

To determine whether force was applied in good faith to restore order or maliciously with the intent to cause harm, the court must consider the following factors: the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner. *Cockrell*, 510 F.3d at 1311. In addition, the court must consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  In this case, the nature of J.P.'s injuries (bleeding, bruises, a cracked tooth, and a knot on his head) indicate a nontrivial use of force.  If the allegations in the complaint are true, Crews did not need to apply *any* physical force to restore order, and certainly not the amount of force that caused J.P.'s alleged injuries.  In addition, there is no indication that Crews could reasonably have perceived that the amount of force he used was necessary to ensure the safety of the staff or inmates, or that he made any effort to temper the severity of the force.  Thus, the alleged facts, if proven, are sufficient to support a finding that Crews exerted nontrivial force not to restore order, but maliciously

and sadistically to cause harm in violation of J.P.'s constitutional rights. *Cf. id*.

Accordingly, the motion to dismiss is due to be denied with respect to Count III of the complaint. *See Iqbal*, 129 S.Ct. at 1950 (explaining that "a complaint that states a plausible claim for relief survives a motion to dismiss"); *Twombly*, 550 U.S. at 555 (holding that factual allegations are sufficient to state a plausible upon which relief can be granted if they are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true").

## IV.   STATE LAW CLAIMS

### A.   Immunity - Alabama Constitution

Article I § 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Crews argues that, because he is an agent of the state, § 14 shields him from liability in his individual capacity[4] for J.P.'s state law claims. (Doc. 6-1 pp. 7-8). In support of his argument, Crews cites two cases: *McMillan v. Johnson*, 101 F.3d 1363 (11th Cir. 1996) and *Tinney v. Shores*, 77 F.3d 378 (11th Cir.1996). *McMillan* and *Tinney* held that, "under Alabama law[,] a sheriff and deputy sheriff are shielded by sovereign immunity against claims based upon intentional torts." *McMillan*, 101 F.3d at 1365. Both *McMillan* and *Tinney* involved "the absolute 'sovereign' immunity . . . afforded to certain state constitutional officers, including sheriffs

---

[4] Crews also argues that § 14 bars state law claims against him in his official capacity. However, J.P. has stipulated that he asserts his state law tort claims against Crews only in his individual capacity, not in his official capacity. (Doc. 12-1 pp. 15-16).

9

and deputy sheriffs." *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998) (describing the holding in *Tinney*); *see also McMillan*, 101 F.3d at 1365 (expressly following the holding in *Tinney*). Under Alabama law, a sheriff is entitled to absolute immunity under § 14 "because of his status as a constitutional officer as detailed in Art. V, § 112, Ala. Const. 1901. Suits against such officers for actions taken in the line and scope of their employment inherently constitute actions against the State, and such actions are prohibited by § 14." *Ex parte Shelley*, 53 So. 3d 887, 895 (Ala. 2009).

Crews is not a constitutional officer of the state. State officers and employees who are not constitutional executive officers are not entitled to absolute immunity under § 14. *See Phillips v. Thomas*, 555 So. 2d 81, 83 (1989) (holding that, under Alabama law, "a state officer or employee may not escape individual tort liability by arguing that his mere status as a state official cloaks him with the state's constitutional immunity" (citations and internal quotation marks omitted)). For instance, unlike sheriffs and their deputies, county "jailers are not entitled to absolute state immunity under Art. I, § 14 of the Alabama Constitution." *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009) (citing *Ex parte Shelley*, 53 So. 3d 887 (Ala. 2009)). Likewise, Crews is not entitled to absolute immunity under § 14.

Section 14 does afford a non-absolute form of state-agent immunity to state employees. *See Shelley*, 53 So. 3d at 897 (distinguishing between the absolute immunity afforded to constitutional officers and the state-agent immunity afforded to other state agents and employees); *Ex parte Cranman*, 792 So.2d 392, 405 (Ala.2000) (clarifying the rules

governing state-agent immunity under § 14). *Cf. Alabama Dept. of Corrections v. Thompson*, 855 So. 2d 1016, 1020-22 (Ala. 2003) (finding that correctional officers employed by the Alabama Department of Corrections were not entitled to state agent immunity from the negligence claim of the victim of assault by an escapee). Although Crews suggests conclusorily that he has "qualified immunity" under § 14 (Doc. 6-1 p. 8), he presents no substantive argument or legal authority as to whether he is entitled to state-agent immunity. Crews's cursory invocation of the doctrine of qualified immunity in not sufficient to support a motion to dismiss. *See Ex parte Sawyer*, 984 So.2d 1100, 1107 (Ala. 2007) (holding that, under Alabama law, "[q]ualified immunity [now referred to as [s]tate-agent immunity] is an affirmative defense that the defendant must raise and prove").

Accordingly, the motion to dismiss is due to be denied with respect to Crews's argument that he is immune from J.P.'s state law claims under Article I § 14 of the Alabama Constitution.

**B.     Counts IV and V-Assault, Battery, and Tort of Outrage**

Crews alleges summarily that J.P.'s complaint does not contain sufficient factual averments to plausibly satisfy the elements of the torts of assault, battery, and outrage. Crews's conclusory arguments are not sufficient to support his motion to dismiss.

**C.     Count VI - Invasion of Privacy**

In his motion to dismiss, Crews argues that J.P. has not alleged facts sufficient to

allege the necessary elements of a state law claim for invasion of privacy[5] because "the Eleventh Circuit has not recognized a right to bodily integrity in the context of a prison official using force to restore order." (Doc. 6-1 p. 9). However, the allegations of the complaint, if true, would establish that Crews was *not* using force to restore order, because J.P. and the other two juveniles ceased their destructive behavior immediately when Crews entered the room. Furthermore, J.P.'s invasion of privacy claim invokes a tort defined by Alabama state law, not a federal constitutional claim for invasion of bodily integrity protected by substantive due process. *Cf. Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("recognizing a prisoner's constitutional right to bodily privacy"). Crews's reliance on Eleventh Circuit case law concerning substantive due process under the United States Constitution is, therefore, misplaced. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945) (holding that a federal court exercising jurisdiction over a claim under state law sits as a court of the forum state and is bound to apply its substantive law).

## Conclusion

For the reasons stated above, the court concludes that the motion to dismiss is due to be granted in part and denied in part. Accordingly, it is

**ORDERED** that the motion to dismiss (Doc. 6) be and hereby is **GRANTED** with

---

[5] Under Alabama law, " the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maint. Servs., Inc.*, 435 So.2d 705 (Ala.1983). The complaint alleges that Crews "unlawfully intruded into Plaintiff's private activities, solace, solitude, and bodily integrity." (Doc. 1 ¶ 68).

respect to Count I of the complaint, and Count I is hereby **DISMISSED** with prejudice. Further, it is

**ORDERED** that, in all other respects, the motion to dismiss (Doc. 6) be and is hereby **DENIED**.

Done this 27th day of April, 2012.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE